UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JAMES E. BOYD, ) | |
| ) | No. CV-10-0196-CI |
| Plaintiff, ) | |
| ) | ORDER DENYING PLAINTIFF'S |
| v. ) | MOTION FOR SUMMARY JUDGMENT |
| ) | AND DIRECTING ENTRY OF |
| MICHAEL J. ASTRUE, ) | JUDGMENT FOR DEFENDANT |
| Commissioner of Social ) | |
| Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

BEFORE THE COURT are cross-Motions for Summary Judgment. (ECF No. 13, 18.) Attorney Maureen J. Rosette represents Plaintiff; Special Assistant United States Attorney Leisa A. Wolf represents Defendant. The parties have consented to proceed before a magistrate judge. (ECF No. 7.) After reviewing the administrative record and the briefs filed by the parties, the court **DENIES** Plaintiff's Motion for Summary Judgment and directs entry of judgment for Defendant.

Plaintiff protectively filed for Supplemental Security Income (SSI) on May 15, 2007. (Tr. 137.) He alleged disability due to attention deficit disorder (ADD), anxiety, depression, and post-traumatic stress disorder, with an onset date of October 24, 1990. (Tr. 122, 142.) Following a denial of benefits at the initial stage and on reconsideration, Plaintiff requested a hearing before an administrative law judge (ALJ), which was held before ALJ Gene Duncan on December 8, 2008. (Tr. 33-84.) On April 14, 2009, ALJ

Duncan denied benefits; review was denied by the Appeals Council. (Tr. 1-4, 19-32.) This appeal followed. Jurisdiction is appropriate pursuant to 42 U.S.C. § 405(g).

### STANDARD OF REVIEW

In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the court set out the standard of review:

> The decision of the Commissioner may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id.* at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.* 169 F.3d 595, 599 (9th Cir. 1999).
>
> The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, although deference is owed to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).

### SEQUENTIAL PROCESS

Also in *Edlund*, 253 F.3d at 1156-1157, the court set out the requirements necessary to establish disability:

> Under the Social Security Act, individuals who are "under a disability" are eligible to receive benefits. 42 U.S.C. § 423(a)(1)(D). A "disability" is defined as "any medically determinable physical or mental impairment" which prevents one from engaging "in any substantial gainful activity" and is expected to result in death or last "for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Such an impairment must result from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). The Act also provides that a

claimant will be eligible for benefits only if his impairments "are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . " 42 U.S.C. § 423(d)(2)(A). Thus, the definition of disability consists of both medical and vocational components.

In evaluating whether a claimant suffers from a disability, an ALJ must apply a five-step sequential inquiry addressing both components of the definition, until a question is answered affirmatively or negatively in such a way that an ultimate determination can be made. 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f). "The claimant bears the burden of proving that [s]he is disabled." *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). This requires the presentation of "complete and detailed objective medical reports of h[is] condition from licensed medical professionals." *Id*. (citing 20 C.F.R. §§ 404.1512(a)-(b), 404.1513(d)).

**STATEMENT OF FACTS**

The facts of the case are set forth in detail in the transcript of proceedings, and are briefly summarized here. Plaintiff was 45 years old at the time of the administrative hearing and living in a homeless shelter. (Tr. 36-37, 66.) He testified he had a high school education and community college courses in culinary arts and printing. (Tr. 37.) Plaintiff reported a history of substance abuse, drug related incarcerations, and chemical dependency treatment. (Tr. 324.) He stated he had past work experience as a cook and kitchen helper, but could not maintain employment because he did not get along with people, had problems with anger management, and was unmotivated. (Tr. 51, 58-60.)

**ADMINISTRATIVE DECISION**

At step one, ALJ Duncan found Plaintiff had not engaged in substantial gainful activity since application date, May 15, 2007. (Tr. 21.) At step two, he found Plaintiff has severe impairments of

asthma, obesity, and personality disorder. (*Id*.) He gave a detailed summary of the medical evidence, and found Plaintiff's diagnosed adjustment disorder and migraine headaches were not severe impairments. (Tr. 27.) At step three, he found Plaintiff's impairments alone and in combination did not meet or equal the requirements of a listed impairment in 20 C.F.R., Part 404, Subpart P, Appendix 1 (Listings). The ALJ discussed Plaintiff's testimony and concluded Plaintiff's statements about his symptoms and limitations were inconsistent, exaggerated, and not credible. (Tr. 29-30.) At step four he found Plaintiff could perform medium work with the following restrictions:

> He should not operate moving machinery. He should avoid exposure to dust, fumes, odors and gases. He is capable of simple, routine work with occasional, superficial coworker and public interaction. He can work independently but not in coordination with coworkers. He can occasionally have contact with supervisors. He should work with objects, not people. He should not work where there is direct access to drugs or alcohol. He is not capable of security work or where he would be in charge of the safety of others. He is not capable of prolonged reading for context and comparison. There should be few changes in the work environment. He could be expected to be off-task 3% of the time.

(Tr. 28.) At step four, based on the entire record and VE testimony, the ALJ found Plaintiff's RFC permits him to perform his past relevant work as a kitchen helper; therefore, Plaintiff was not under a disability as defined by the Social Security Act. (Tr. 31-32.)

## ISSUES

The question presented is whether there was substantial evidence to support the ALJ's decision denying benefits and, if so, whether that decision was based on proper legal standards. Plaintiff

contends the ALJ erred when he: (1) found Plaintiff's depression and anxiety disorders were not severe impairments; (2) improperly rejected examining psychologists' opinions; (3) did not give sufficient weight to his treating nurse practitioner's opinions; and (4) improperly relied on medical expert testimony.  (ECF No. 14.)

**DISCUSSION**

**A.   Step Two Findings**

To satisfy step two's requirement of a severe impairment, the claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice.  20 C.F.R. § 416.908.  The credible medical evidence must also show that the impairment (1) causes functional limitations that have more than a minimal effect on Plaintiff's ability to do work activities, and (2) last more than 12 months.  20 C.F.R. §§ 404.1509, 416.909; *Social Security Ruling (SSR)* 96-03p. The fact that a medically determinable condition exists does not automatically mean the symptoms are "severe," or "disabling" as defined by the Social Security regulations. *See, e.g., Edlund*, 253 F.3d at 1159-60; *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *Key v. Heckler*, 754 F.2d 1545, 1549-50 (9th Cir. 1985). An impairment may be found to be "non-severe" when evidence establishes a slight abnormality that has no more than "a *minimal effect* on an individual's ability to work." *(SSR)* 85-28).

In determining whether a claimant has a severe impairment the ALJ must evaluate the medical evidence submitted and explain the weight given to the opinions of accepted medical sources in the

record. The regulations distinguish among the opinions of three types of accepted medical sources: (1) sources who have treated the claimant; (2) sources who have examined the claimant; and (3) sources who have neither examined nor treated the claimant, but express their opinion based upon a review of the claimant's medical records. 20 C.F.R. § 416.927. A treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a non-examining reviewing or consulting physician's opinion. *Benecke v. Barnhart,* 379 F.3d 587, 592 (9th Cir. 2004); *Lester* v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).

In addition, courts have upheld an ALJ's decision to reject the opinion of an examining physician based in part on the testimony of a non-examining medical expert. *Lester*, 81 F.3d at 831. The analysis and opinion of an expert selected by the ALJ may be helpful in his adjudication, and the court should not second guess the ALJ's resolution of conflicting medical testimony. *Andrews,* 53 F.3d at 1041, *citing Magallanes v. Bowen,* 881 F.2nd 747, 753 (9th Cir. 1989). Further, testimony of a medical expert may serve as substantial evidence when supported by and consistent with other evidence in the record. *Id.*

Even though medical evidence only is considered at step two, credibility is an appropriate factor to consider in evaluating the medical evidence submitted. When there are conflicts in the various medical reports submitted or questions of credibility, it is the responsibility of the ALJ to resolve those conflicts. *Thomas v. Barnhart,* 278 F.3d 947, 956 (9th Cir. 2002). Where the evidence is

susceptible to more than one rational interpretation, the findings of the ALJ will be upheld. *Id*. at 954.

Plaintiff contends the ALJ failed to include diagnosed affective disorder or adjustment disorder as severe impairments at step two. (ECF No. 14 at 11.) He argues the evaluations completed by psychologists Jay Toews, Ed.D., Frank Rosekrans, Ph.D., and Dennis Pollack, Ph.D., are sufficient to establish step two severity for these impairments. Specifically, he argues the examining psychologists opined limitations caused by his affective disorders (adjustment disorder and depression) caused more than mild limitations in his functional capabilities. He also contends the ALJ erred in the weight given ARNP Teresa Colley's opinions that Plaintiff has severe depression and generalized anxiety disorder that preclude successful employment. (*Id*. at 13-14.)

The record shows prior to the December 8, 2008, administrative hearing, Dr. Toews examined Plaintiff and diagnosed methamphetamine dependence and polysubstance abuse in early full remission (by history); adjustment disorder with mild anxiety and depressed mood (mild); malingering memory problems (probable); and antisocial personality features. (Tr. 247.) To assist in interpreting the psychological test scores and medical findings, the ALJ obtained medical expert testimony from Ronald Klein, Ph.D. As Plaintiff points out, after the hearing, additional psychological evaluations were completed by Drs. Toews, Pollack, and Rosekrans and submitted to the ALJ. (Tr. 310-22, 323-27, 330-36.) Plaintiff contends the ALJ erroneously relied on Dr. Klein's testimony because Dr. Klein did not review these later reports. (ECF 14 at 16.) This contention

is unsupported by the ALJ's findings, the regulations, and case law.

Where there is conflicting medical evidence, it is the sole responsibility of the ALJ, not the medical expert, to resolve those conflicts. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). While the analysis and opinion of an expert selected by an ALJ may be helpful in his adjudication, the ALJ's resolution of conflicting medical testimony is not dependent upon the medical expert's testimony. *Id.* There is no requirement that the ALJ substitute the judgment of a medical expert for his own. *Id.; see also* 20 C.F.R. § 416.927(e)(2)(no special significance given to medical opinions on issues of severity of impairment or RFC).

Here, although the ALJ indicated he gave "great weight" to Dr. Klein's testimony, he did not rely on Dr. Klein's testimony in making the step two or RFC findings. (Tr. 31.) Significantly, the ALJ's step two and RFC findings do not reflect Dr. Klein's opinions that Plaintiff's mental impairments cause "no impairment of activities of daily living, mild impairment in social function, mild impairment in concentration, persistence and pace, and no episode of decompensation." (Tr. 41.)

Independent review shows the ALJ considered all probative medical evidence and did not adopt Dr. Klein's opinions regarding impairment severity. The ALJ thoroughly summarized the pre and post-hearing evaluations from Dr. Toews, post-hearing evaluations from Drs. Rosekrans and Pollack, as well as Ms. Colley's opinions, gave his interpretation of the evidence, and made findings. (Tr. 21-27.) The ALJ found Plaintiff's personality disorder is severe and the diagnosed adjustment disorder was non-severe; the

Commissioner's final RFC findings include restrictions to address Plaintiff's mild to moderate social and cognitive functional limitations caused by the severe and non-severe impairments alone and in combination.[1] (Tr. 28.) As discussed below, the ALJ gave legally sufficient reasons for the weight given acceptable medical source opinions and Ms. Colley's opinions. The ALJ's reasoning is supported by substantial medical evidence in the entire record, as well as inferences "logically flowing from the evidence." *Sample*, 694 F.2d at 642. Thus, Plaintiff's argument that the ALJ erroneously relied on Dr. Klein's testimony at step two fails.

Nonetheless, Dr. Klein did assist the ALJ in interpreting psychological test scores that indicated Plaintiff was "deliberately attempting to distort cognitive and memory function." (Tr. 30.) Other evidence record amply supports Dr. Klein's opinions regarding the reliability of psychological testing used to evaluate Plaintiff's mental condition and the interpretation of test results. The ALJ did not err in relying on Dr. Klein's testimony that Plaintiff is unmotivated to work and not credible, but he is not disabled. (*Id.*)

**B.   Rejection of Acceptable Medical Opinions**

The Commissioner must provide "clear and convincing" reasons for rejecting uncontradicted opinions of a treating or examining physician. *Lester*, 81 F.3d at 830 (citation omitted). If the opinion is contradicted, it can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the

---

[1] Mental disorders under Listing 12.04 (*Affective Disorders*) include adjustment disorder and depression.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND DIRECTING ENTRY OF JUDGMENT FOR DEFENDANT - 9

record. *Andrews*, 53 F.3d at 1043. The ALJ can meet this burden by giving a detailed and thorough summary of the facts and conflicting clinical evidence, state his interpretation of the evidence, and make findings. *Thomas*, 278 F.3d at 957. In any case, the ALJ is not obliged to accept the opinion of a medical source if the opinion is inadequately supported by clinical findings. *Thomas*, 278 F.3d at 956.

Here, after a thorough summary of the medical evidence, the ALJ gave specific and legitimate reasons for rejecting the examining medical source opinions that limitations caused by Plaintiff's diagnosed affective/adjustment disorder caused more than minimal limitations in his cognitive and social functioning.

**1. Dr. Toews**

Dr. Toews evaluated Plaintiff in July 2007 and March 2009. Both evaluations were summarized by the ALJ. (Tr. 30.) As found by the ALJ, in 2007, Dr. Toews diagnosed drug abuse, adjustment disorder with mild anxiety and mild depressed mood, and antisocial personality features. He specifically opined there were no symptoms indicating PTSD, ADD, major depression, or dysthmia. (Tr. 24, 247.) Dr. Toews also found significant evidence of malingering in the objective psychological testing and during the mental status exam. (Tr. 24, 30, 246.) The ALJ noted Dr. Toews' conclusion that Plaintiff was having typical problems related to adapting to the community after incarceration and substance abuse treatment, and "his affective and personality functioning would be adversely affected by substance abuse." (Tr. 24, 247.) Dr. Toews concluded Plaintiff could comprehend 2-3 step instruction, could perform

routine and repetitive types of jobs and could function at a normal pace, with sustained attention and concentration over time. He specifically noted Plaintiff would have problems working with people as a team. (Tr. 246.) These diagnoses and limitations are reflected in the ALJ's RFC determination. (Tr. 28.)

In March 2009, Dr. Toews evaluated Plaintiff again. (Tr. 323-37.) As reflected in the ALJ's summary, although Plaintiff reported severe functional limitations, Dr. Toews noted Plaintiff's mental status exam was within a normal range, his reported seizures were drug-related, and self-reported limitations were due to lack of motivation. (Tr. 323-24.) He observed Plaintiff's attention and concentration were "grossly normal," he was cognitively intact, and "appeared to function in the borderline range of intelligence." (Tr. 27, 323-34.) Significantly, Dr. Toews administered a test to detect malingering, the results of which indicated "a high likelihood of malingering." (Tr. 326.) As noted by Dr. Toews, Plaintiff "endorsed a large number of items on all scales which are atypical of disorders in each of the domains," indicating a high probability of feigning severe psychiatric, neurological, cognitive and affective symptoms."[2] (Tr. 326.) Nonetheless, in contrast to

---

[2] In his summary of the medical evidence, from which the court can draw inferences, the ALJ noted testimony from Dr. Klein that is consistent with this portion of Dr. Toews' second evaluation. Specifically, Dr. Klein testified that test results from the various psychological evaluations were inconsistent, indicated impairments that would require an individual to be institutionalized, and

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND DIRECTING ENTRY OF JUDGMENT FOR DEFENDANT - 11

the first evaluation in which malingering was present, Dr. Toews diagnosed a cognitive disorder; major depressive disorder, recurrent, with PTSD features; learning disorder; personality disorder; and borderline intellectual functioning, and opined it was unlikely Plaintiff could adjust to simple, routine, and repetitive employment. (Tr. 326-27.) The ALJ summarized Dr. Toews' findings, and rejected specific opinions contained in the second evaluation because: (1) Dr. Toews failed to explain the significant change in his opinion; (2) the longitudinal record did not show a change in circumstances to support Dr. Toews revised opinions; and (3) the revised opinions were based on Plaintiff's inconsistent and exaggerated information. (Tr. 30-31.) These legally sufficient reasons are supported by substantial evidence.

**2.  Dr. Rosekrans**

The ALJ summarized evaluations signed by Dr. Rosekrans in January 9, 2008, and January 30, 2009, noting findings of mild limitations in cognitive factors and moderate to marked limitations in social factors. (Tr. 23, 26.) As found by the ALJ, at the time of the January 2008 evaluation, Plaintiff reported his last drug/alcohol use was 35 days prior to the evaluation. (Tr. 23, 294.) Dr. Rosekrans and his associate, Dr. Maua, diagnosed polysubstance dependence with recent abuse, adjustment disorder, with mixed anxiety and depressed mood, and antisocial disorder. (Tr. 295.) They also opined Plaintiff "was not likely to succeed in the workforce at that time," recommended re-evaluation of his depression

---

Trailmaking scores were so poor "that even people after a stroke don't do that poorly." (Tr. 25, 42-43.)

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND DIRECTING ENTRY OF JUDGMENT FOR DEFENDANT - 12

and anxiety after drug treatment and 90 days of sobriety. (*Id*.) The ALJ properly discounted limitations assessed in 2008, as the evaluators indicated Plaintiff's self-reported substance abuse made it difficult to assess the nature of his mental impairments. *See Parra v. Astrue*, 481 F.3d 742, 744 (9th Cir. 2007) (disability benefits precluded where substance abuse is contributing factor material to alleged disability).

In his second evaluation, Dr. Rosekrans reviewed reports from prior examinations and noted that Dr. Moua examined Plaintiff in August 2008, at which time Plaintiff reported cocaine and alcohol use three weeks prior to the interview and indicated he was in outpatient treatment and "thought inpatient treatment might be necessary."[3] (Tr. 334.) As noted by the ALJ, Dr. Rosekrans also referenced the November 2008 evaluation by Dr. Pollack in which Plaintiff denied alcohol use and made no mention of substance abuse. (Tr. 26, 334-35.) This lack of candor regarding substance abuse significantly decreases the credibility of Plaintiff's statements to Dr. Pollack. *Verduzco v. Apfel,* 188 F.3d 1087, 1090 (9th Cir. 1999). Dr. Pollack administered objective psychological tests and diagnosed malingering, alcohol dependence in remission, and personality disorder with antisocial and paranoid features. (Tr. 335.) Dr. Rosekrans appears to have relied on Dr. Pollack's test results, which as discussed below, were rejected by the ALJ because of significant evidence of malingering throughout the testing. (Tr. 336.)

In the second evaluation with Dr. Rosekrans, Plaintiff

---

[3] This evaluation does not appear to be in the record.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND DIRECTING ENTRY OF JUDGMENT FOR DEFENDANT - 13

reported he had been clean and sober for four months, without treatment. He scored in the normal range on his mini-mental status exam and on Trails A and B (compared to a severely impaired score in the Trails B the year before). (Tr. 335, 294.) He reported no difficulty with his activities of daily living on the streets or in the homeless shelter. In the accompanying checkbox evaluation form, Dr. Rosekrans opined Plaintiff had no limits in his ability to understand and follow simple instructions or perform routine task; moderate limitations in the remaining cognitive factors, and moderate to marked limitations in his social functioning. (Tr. 332.) The ALJ incorporated the cognitive limitations into his RFC assessment, and discounted moderate and marked limitations noted because they were inconsistent with other evidence and based on Plaintiff's incredible statements. (Tr. 31.) These reasons are specific and legitimate and supported by the ALJ's unchallenged credibility findings and ample evidence throughout the record of Plaintiff's malingering, exaggeration of symptoms, and inconsistent statements. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (medical opinions properly rejected if based on a claimant's unreliable statements).

**3. Dr. Pollack**

Plaintiff argues the ALJ failed to give a specific, legitimate reason for rejecting Dr. Pollack's evaluation. (ECF No. 14 at 20.) However, Plaintiff fails to support this argument with analysis or case law. *Carmickle v. Comm of Soc Sec,* 533 F.3d 1155, 1161 n.2 (2008) (court unable to consider issue that is not "specifically and distinctly argued"). Independent review shows the ALJ met his

burden by summarizing Dr. Pollack's post-hearing evaluation, noting Dr. Pollack's finding that Plaintiff's elevated F-scale core that "was off the graph," and made the personality test uninterpretable. (Tr. 26.) Based on Plaintiff's interview (because the objective personality test was invalid), Dr. Pollack opined Plaintiff had moderate to marked limitations in his mental functioning. (Tr. 26, 320.) The ALJ specifically rejected Dr. Pollack's opinions because of the malingering diagnosis. (Tr. 31.) This is a specific and legitimate reason to reject an examining source, and the objective findings in Dr. Pollack's own report, as well as other affirmative evidence of malingering in the record support this reason. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008); *Tonapetyan*, 242 F.3d at 1149; *Fair*, 885 F.2d at 605.

**C.    "Other Source" Opinions.**

The record shows Teresa Colley, ARNP at Grace Clinic, provided medical care for Plaintiff while he was in treatment and recovery for cocaine and alcohol dependency at Sunray Court. Treatment notes and correspondence by Ms. Colley are from May and July 2007, and February and March 2008. (Tr. 231, 239, 277, 280, 297-98, 301.) Ms. Colley assessed depression and prescribed anti-depressants.[4] On February 2, 2008, after Plaintiff was denied state benefits, Ms.

---

[4] Plaintiff asserts that "doctors" at Grace Clinic "continually diagnosed Mr. Boyd with depression and anxiety." (ECF 20 at 2.) However, the records cited by Plaintiff to support this allegation are signed by ARAP Colley, who is not an acceptable medical source qualified to provide a diagnosis. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND DIRECTING ENTRY OF JUDGMENT FOR DEFENDANT - 15

Colley wrote a letter opining Plaintiff was severely depressed and needed medical coverage to address mental health issues "stemming from substance abuse." (Tr. 297.) She opined that Plaintiff's depression, in combination with substance abuse and his diagnosed anti-social personality disorder would "present severe difficulties to employment." (Tr. 298.)

Plaintiff contends this evidence is sufficient to establish his depression as a severe impairment. However, Ms. Colley is not an acceptable medical source qualified to establish a medically determinable impairment for Social Security disability purposes. Instead, as a nurse practitioner, her opinions must be considered by the ALJ in assessing the impact a diagnosed impairment has on work related functioning. 20 C.F.R. § 416.927, .913(d); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001); *Nguyen*, 100 F.3d at 1467.

The ALJ specifically considered Ms. Colley's opinion that Plaintiff's anxiety and antisocial personality disorder presented severe difficulties to employment. (Tr. 30.) He properly disregarded her diagnoses because she is not an acceptable medical source. *Id.* 20 C.F.R. § 416.913, .927; *SSR* 06-03p. Regarding symptoms, the ALJ referenced Ms. Colley's treatment notes from February 19, 2008, in which Plaintiff reported decreased anxiety and depression symptoms with medication. (Tr. 23, 30, 301.) He gave little weight to Ms. Colley's opinions that Plaintiff's mental disorders "presented severe difficulties to employment," because her opinions were based on an outdated assessment tool and Plaintiff's unreliable statements. (Tr. 30.) These specific reasons, "germane" to Ms. Colley, are supported amply by the record. *Nguyen*, 100 F.3d at

1467.  As explained by Dr. Klein, the *Zung Self-Rating Depression Scale* used by Ms. Colley to assess Plaintiff is an outdated questionnaire, and there are more competent ways to assess depression. (Tr. 49-50, 232-34.)  As indicated by its name and instructions, the *Zung* test is a screening tool only, is not used as a diagnostic device, and is reliant upon self-report. (Tr. 234.)

Citing *SSR* 06-03p, Plaintiff argues Ms. Colley's opinions should have been given greater weight because she saw Plaintiff more than anyone else.  (ECF No. 14 at 17.)  In *SSR* 06-03p, the Commissioner directs that certain factors must be considered in the evaluation of other source opinions, *e.g.,* their professional qualifications, how consistent their opinions are with the other evidence, the amount of evidence provided in support of their opinions, whether the other source opinion is well explained, and whether the other source "has a specialty or area of expertise related to the individual's impairment." *SSR* 06-03p. However, Ms. Colley's clinic notes do not evidence a lengthy treating relationship with Plaintiff, or establish that Ms. Colley has specialized training in mental disorders. Further, the record shows Ms. Colley had limited contact with Plaintiff while he was being treated for substance abuse in May and July of 2007 and February 2008. (Tr. 231-41, 275-81, 296-98.) Substantial evidence supports the weight given Ms. Colley's other source opinions.

**D.   Final RFC Determination**

The final determination regarding a claimant's ability to perform basic work is the sole responsibility of the Commissioner. 20 C.F.R. § 416.946; *SSR* 96-5p (RFC assessment is an administrative

finding of fact reserved to the Commissioner). No special significance is given to a medical source opinion on issues reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e), 416.927(e). The ALJ is "responsible for determining credibility, resolving conflicts in medical testimony and for resolving ambiguities." *Richardson,* 402 U.S. at 400; *Andrews*, 53 F.3d at 1039; *SSR* 96-8p.

Here, the ALJ's finding that no medical source can evaluate Plaintiff's mental condition because of his malingering, exaggeration of symptoms and inconsistent statements is supported by substantial evidence in the record and is unchallenged. Every examining psychologist noted objective test scores indicating invalid test results and/or clear malingering. Plaintiff's statements regarding limitations, past work history, and drug and alcohol use are inconsistent throughout the record. The ALJ's final RFC determination reflects a careful consideration of medical evidence establishing a diagnosis of anti-social personality disorder, non-severe impairments, limitations supported by the record, and Plaintiff's credible statements regarding his ability to be around people, his past employment, and past living arrangements. Because the final RFC determination is supported by substantial evidence and is a rational interpretation of the entire record, it may not be disturbed.

The hearing transcript also shows the ALJ propounded two hypothetical questions with limitations supported by the record, including "no prolonged reading for context or comprehension," superficial contact with co-workers, and being "off task" three percent throughout the day. (Tr. 79.) The VE opined the individual

could still perform the kitchen helper job. (Tr. 79-80.) Because the VE's testimony is based on functional limitations supported by the record, his opinions are considered substantial evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). The ALJ's final determination that Plaintiff can perform past work as a kitchen helper and is not under a disability is a rational interpretation of the evidence in its entirety, and the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097. Accordingly,

**IT IS ORDERED**:

1. Plaintiff's Motion for Summary Judgment **(ECF No. 13)** is **DENIED.**

2. Defendant's Motion for Summary Judgment dismissal **(ECF No. 18**) is **GRANTED**.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. The file shall be **CLOSED** and judgment entered for Defendant.

DATED September 7, 2011.

               S/ CYNTHIA IMBROGNO
            UNITED STATES MAGISTRATE JUDGE